**CANDIS MITCHELL**
California State Bar No. 242797
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Candis_Mitchell@fd.org

Attorneys for Mr. Mario Raymond Fernandez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JAN M. ADLER)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **MARIO RAYMOND FERNANDEZ**, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No.  07cr3405-W <br><br> DATE: April 22, 2008 <br> TIME: 10.30 A.M. <br><br> **DEFENDANT'S RESPONSE AND OPPOSITION TO MATERIAL WITNESS' MOTION FOR VIDEOTAPED DEPOSITIONS** |

**I.**

**STATEMENT OF FACTS**[1]

**A.     The Stop and Arrest of Mr. Fernandez**

On December 9, 2007, Customs and Border Patrol Agents were performing surveillance in Calexico, California, in a neighborhood directly north of the International Border Fence. In this developed neighborhood, Agents Sedano and Carter took positions that would allow them surveillance of the border fence and surrounding area. After nightfall, both officers observed Mr. Fernandez and Mr. Flores-Blanco walking about in the neighborhood.

---

[1] Unless otherwise stated, the "facts" referenced in these papers come from government-produced discovery that the defense continues to investigate. Mr. Fernandez does not admit the accuracy of this information and reserves the right to challenge it at any time.

1  At approximately 8:00 p.m., the officers said they observed Mr. Fernandez and Mr. Flores-Blanco

2  converse for a short period of time on the street and then walk to the backyard of Mr. Flores-Blanco's

3  residence at 806 West Second Street, Calexico, California.  The agents contend that during the course of

4  their surveillance, they observed Mr. Fernandez walk around the area of Mr. Flores-Blanco's home and make

5  numerous phone calls.

6  According to the agents, at approximately 12:40 a.m. Mr. Fernandez and Mr. Flores-Blanco exited

7  the backyard of Mr. Flores-Blanco. They separated and Mr. Fernandez walked south along Encinas Avenue

8  while Mr. Flores-Blanco walked to a nearby set of apartments referred to as the "White Apartments."

9  While they were observing the actions of Mr. Fernandez and Mr. Flores-Blanco, the agents became

10 aware of a suspected alien smuggler and undocumented individual on the other side of the international

11 fence. According to the agents, it appeared that the smuggler was in communication with someone on a cell

12 phone.  They contend that they heard Mr. Fernandez say, "we're ready, now, now," while he was waving.

13 The agents also report that Mr. Flores-Blanco was by the side of the "White Apartments"at the same time

14 Mr. Fernandez was waiving..

15 At approximately 12:45 a.m. a Remote Video Surveillance System operator notified Agents Serano

16 and Carter that an individual was climbing the International Border Fence near the "White Apartments."

17 The agents responded to the area, after seeing someone run from the fence to the side of the apartments.

18 Upon questioning the material witness, Mr. Portillo-Mendoza, he revealed that a friend of his made all of

19 his arrangements to bring him into the United States  Further, Mr. Portillo-Mendoza stated that he climbed

20 the fence upon instruction of the individual on the Mexican side of the fence who instructed him to run to

21 the individual who was waiving at him, but once he reached the "White Apartments" that individual was

22 no longer there.  Mr. Portillo-Mendoza could not identify either Mr. Fernandez or Mr. Flores-Blanco when

23 shown a photo-lineup post arrest.

24 **B.    Interrogation**

25 At the border patrol station, Mr. Fernandez was read his Miranda rights and questioned regarding

26 the incident. Mr. Fernandez made statements regarding his involvement in the offense. He indicated that

27 he had gone a friend's house to visit with his brother, who he had hoped was there.  After not being able

28 locate his brother at either location that he looked for him at, Mr. Fernandez walked past Mr. Flores-Blano's

1  home and exchanged pleasantries before continuing on to another friend's house. Mr. Fernandez ardently
2  denied being involved in smuggling any individuals and had no cell phone on his person at the time of his
3  arrest.

4  **C.    Trial**

5  On December 19, 2007, Mr. Fernandez was indicted for encouraging and inducing an alien to enter
6  and reside in the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and (v)(II).
7  Counsel for the material witnesses filed a motion requesting a video deposition and the witnesses
8  release to allow for removal of material witness Mr. Portillo-Mendoza to Mexico. Defense counsel on
9  behalf of Mr. Fernandez objects to the release of the material witness, and requests that the Court either
10 detain him or modify his bond so he can remain legally in the United States until the trial is over or the case
11 is resolved.

**II.**

**THE MOTION FOR THE MATERIAL WITNESS' DEPOSITION SHOULD BE DENIED BECAUSE THERE IS NO SHOWING OF UNAVAILABILITY OF THE WITNESS AND THE MOTION IS MADE PREMATURELY**

15 Title 18, United States Code § 3144 governs the detention of individuals who may give testimony
16 material to a criminal proceeding. This section provides that where the witness is not able to meet the
17 conditions of the bond set by the court and is detained, the court may order the deposition of the witness
18 where (1) deposition may secure the testimony of the witness and (2) further detention is not necessary to
19 prevent a failure of justice. See 18 U.S.C. § 3144. In this case, the material witness has moved for
20 videotaped depositions pursuant to 18 U.S.C. § 3144. Although a deposition may secure the material
21 witness' testimony, this Court should order the material witness' continued detention in order to protect Mr.
22 Fernandez's constitutional rights. In the alternative, this Court should modify the conditions of release so
23 that the material witness can remain in the United States until this case is resolved.

24 Depositions in criminal cases are generally disfavored for several reasons, including the threat to the
25 defendant's Sixth Amendment confrontation rights. United States v. Drogoul, 1 F.3d 1546, 1551-52
26 (11th Cir. 1993). All defendants have the right to confront witnesses against them. See U.S. CONST.
27 Amend. VI. The Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), reaffirmed this
28 principle — developed at common law and incorporated into the Confrontation Clause of the

Sixth Amendment by the Framers — that testimonial statements may not be admitted against a defendant where the defendant has not had the opportunity to cross-examine the declarant. This is true even where the statements fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of trustworthiness." Id. at 60.

In Crawford, the Supreme Court noted that the Sixth Amendment was drafted in order to protect against the "civil-law mode of criminal procedure" and "its use of *ex parte* examinations as evidence against the accused." Id. at 50. Such *ex parte* examinations implicate Sixth Amendment concerns because they are "testimonial" in nature. The "text of the Confrontation Clause reflects this focus" and applies to "witnesses against the accused - in other words, those who bear testimony." Id. at 51 (internal quotations omitted). Although the Supreme Court declined to define "testimonial" evidence, they noted that an "accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." Id. The Confrontation Clause does not permit such testimonial statements to be admitted at trial against an accused without the constitutionally prescribed method of determining reliability, *i.e.*, confrontation. Id. at 61-65. In other words, "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands . . . unavailability [of the declarant] and a prior opportunity for cross-examination." Id. at 68.

Despite Crawford's broad prohibition of testimonial statements at trial where the defendant has no opportunity to confront the witness, there are some situations in which depositions may nonetheless be taken. In these situations, the burden is on the moving party to establish *exceptional circumstances* justifying the taking of depositions. Drogoul, 1 F.3d 1546 at 1552 (citing United States v. Fuentes-Galindo, 929 F.2d 1507, 1510 (10th Cir. 1991)). The trial court's discretion is generally guided by consideration of certain "critical factors," such as whether (1) the witness is unavailable to testify at trial; (2) injustice will result because testimony material to the nonmoving party's case will be absent; and (3) countervailing factors render taking the deposition unjust to the nonmoving party. Id. at 1552.

When considering this issue, this Court must balance the interests of the government and the accused, as well as the interests of the material witness. Although the material witness may have a liberty interest at stake, that interest is outweighed by Mr. Fernandez's weighty constitutional rights of confrontation and due process of law. The Confrontation Clause serves several purposes: "(1) ensuring that witnesses will

testify under oath; (2) forcing witnesses to undergo cross-examination; and (3) permitting the jury to observe the demeanor of witnesses." United States v. Sines, 761 F.2d 1434, 1441 (9th Cir. 1985). It allows the accused to test the recollection and the conscience of a witness through cross-examination and allows the jury to observe the process of cross-examination and make an assessment of the witness' credibility. Maryland v. Craig, 497 U.S. 836, 851 (1989); Ohio v. Roberts, 448 U.S. 56, 63-64 (1980). In a case such as the one, where the material witness has received the benefit of the Government refraining from pressing criminal charges in return for her testimony against the accused,[2] it is important that the jury see the reaction and demeanor of the material witness when she is confronted with questions that will bring out such facts in order for the jury to decide whether to believe her statements and/or how much credit to give to her testimony. The jury's ability to make such an assessment would be compromised by a videotaped deposition because the tape may not preserve subtle reactions of the witnesses under cross-examination that may favor the accused.

Moreover, the decision to grant video depositions is governed by Federal Rule of Criminal Procedure 15(a) which states that a material witness' deposition may be taken only upon a showing of "exceptional circumstances." United States v. Omene, 143 F.3d 1167, 1170 (9th Cir. 1998). The material witness here, however, has failed to demonstrate any "exceptional circumstances" justifying the impingement of Mr. Fernandez's Sixth Amendment rights. Rather, the only hardship alleged by the material witness is that he "entered the United States to find work to support family members at home in Mexico. Each day he remains in custody is an additional hardship on himself and his family." See Gilmore Decl. at 2. Nowhere does Mr. Portillo-Mendoza state that there are not *alternative* means of economic support for his family. There is no mention of other family members that may or may not be able to help the his immediate family financially. Furthermore, Mr. Portillo-Mendoza was more than willing to leave her family members behind to come to the United States illegally with *no* guarantee that he would find a job that would allow him to send any money back to Mexico to support these people to whom he is now so desperate to

---

2  This Court should be mindful of the fact that the only reason the Government has not charged the material witnesses with a crime is that the Government seeks to introduce their testimony against the accused. The material witnesses could have been charged with illegal entry under 8 U.S.C. § 1325, which carries a maximum sentence of six (6) months imprisonment. Needless to say, the Government would not concern itself with the material witnesses' liberty interests had it, in fact, charged them with this offense.

return to.

Mr. Portillo-Mendoza argued that under <u>Torres-Ruiz v. United States District Court</u>, 120 F.3d 933, 935 (9th Cir. 1997), the fact that his continued incarceration constitutes an economic hardship for his and his family is sufficient to satisfy their burden of proof under Rule 15(a). Almost any period of incarceration, by definition, will result in some sort of financial hardship to that individual and his family. Economic hardship alone cannot constitute extraordinary circumstances. Rather, as the Court in <u>Torres-Ruiz</u> made clear, extraordinary circumstances require something more: in that case, "tremendous hardship." 120 F.3d at 936. In particular, the material witnesses in <u>Torres-Ruiz</u> were both "the <u>sole</u> support for their respective families in Mexico." <u>Id.</u> at 935 (emphasis added). In the instant case, however, the material witness cannot establish such tremendous hardship through nothing more than a conclusory declaration of his attorney, Mr. Gilmore, that no one will be able to support the clients family while in custody. Gilmore Decl. at 2. There is no allegation made that Mr. Portillo is married or even has children. Nothing is mentioned as to the extraordinary need or burden placed on his family by being in custody. The declaration simply sums up the regrettable but usual difficulties one might expect of being incarcerated. Obviously the material witness in this case, no less than Mr. Fernandez, would want to be free to help supplement his family with economic support, but absent tremendous facts, hardship alone is not sufficient to establish extraordinary circumstances warranting deposition testimony.

Furthermore, this Court should consider the unique circumstances faced by the Ninth Circuit in <u>Torres-Ruiz</u>. Unlike this case, in <u>Torres-Ruiz</u> the material witness' motion for videotape deposition was unopposed by the defendant. 120 F.3d at 934-35. Perhaps more importantly, in <u>Torres-Ruiz</u>, the defendant entered a guilty plea less than two weeks after the motion for deposition was made, indicating that the case was already near disposition when the motion was made. <u>Id.</u> at 936-37. As of now, however, the instant case stands in a much different procedural posture.

Mr. Fernandez has pled not guilty to all counts of the Indictment. This motion is to be heard before the evidentiary hearing date currently scheduled before Judge Whelan on April 28, 2008. The defense has yet to conduct extensive investigation in this case. In short, it is very early in the case. To require Mr. Fernandez to cross-examine the material witness at the current juncture of the proceedings would severely prejudice his future trial rights. Any cross examination of the material witness at this point would be at best

meaningless, and at worst ineffective and potentially harmful to Mr. Fernandez and his defense.

Finally, if the Court determines that the issue must be addressed at this point in time, the Court can easily resolve the issue by modifying the conditions of release for the material witness so that his continued detention would be unnecessary. Conditions of release for material witnesses is governed by 18 U.S.C. § 3142. Under this section, "[t]he judicial officer **shall** order the pretrial release of the person on personal recognizance, or upon execution of an unsecured personal appearance bond . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(b). Moreover, the Bail Reform Act states that "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c)(2). This mandate, combined with the preference for release upon one's own recognizance, strongly suggests that the proper remedy for the material witness in this case is a motion to modify the terms of his release, not for the draconian remedy of immediately ordering a videotaped deposition and deporting the material witness to Mexico, especially not at this very early stage of the proceedings.

The material witness here alleges that he cannot secure a personal surety able to post an appearance bond. Nowhere, however, does the material witness state his unwillingness to remain in the United States during the pendency of this case. This Court can, and should, modify the material witness' bonds to allow him to re-gain his freedom, while at the same time safeguarding Mr. Fernandez's Sixth Amendment rights. The material witness has no incentive not to come back to court to testify. The material witness is not being charged with a crime. The material witness has no incentive to flee the country. Indeed, if the statement of facts in support of the complaint in this case is to be believed, this material witness was prepared to pay money to be smuggled illegally into the United States by friends in the United States. Therefore, he obviously wants to remain in this country, fully within the subpoena power of the Court.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**III.**

**<u>CONCLUSION</u>**

For the foregoing reasons, the Mr. Fernandez respectfully requests that this Court deny the material witness' motion for a videotaped deposition.

                                          Respectfully submitted,

Dated: April 9, 2008                             *s/ Candis Mitchell*
                                                            **CANDIS MITCHELL**
                                                              Federal Defenders of San Diego, Inc.
                                                               Attorneys for Mr. Fernandez