**CANDIS MITCHELL**
California State Bar No. 242797
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Candis_Mitchell@fd.org

Attorneys for Mr. Mario Raymond Fernandez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JAN M. ADLER)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **MARIO RAYMOND FERNANDEZ**, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. 07cr3405-W <br><br> STATEMENT OF FACTS AND <br> MEMORANDUM OF POINTS AND <br> AUTHORITIES IN SUPPORT OF MOTIONS |

**I.**

**STATEMENT OF FACTS**

**A.    The Stop and Arrest of Mr. Fernandez**

On December 9, 2007, Customs and Border Patrol Agents were performing surveillance in Calexico, California, in a neighborhood directly north of the International Border Fence. In this developed neighborhood, Agents Sedano and Carter took positions that would allow them surveillance of the border fence and surrounding area. After nightfall, both officers observed Mr. Fernandez and Mr. Flores-Blanco walking about in the neighborhood.

At approximately 8:00 p.m., the officers said they observed Mr. Fernandez and Mr. Flores-Blanco converse for a short period of time on the street and then walk to the backyard of Mr. Flores-Blanco's residence at 806 West Second Street, Calexico, California. The agents contend that during the course of

1  their surveillance, they observed Mr. Fernandez walk around the area of Mr. Flores-Blanco's home and
2  make numerous phone calls.

3  According to the agents, at approximately 12:40 a.m. Mr. Fernandez and Mr. Flores-Blanco exited
4  the backyard of Mr. Flores-Blanco. They separated and Mr. Fernandez walked south along Encinas Avenue
5  while Mr. Flores-Blanco walked to a nearby set of apartments referred to as the "White Apartments."

6  While they were observing the actions of Mr. Fernandez and Mr. Flores-Blanco, the agents became
7  aware of a suspected alien smuggler and undocumented individual on the other side of the international
8  fence. According to the agents, it appeared that the smuggler was in communication with someone on a cell
9  phone. They contend that they heard Mr. Fernandez say, "we're ready, now, now," while he was waving.
10 The agents also report that Mr. Flores-Blanco was by the side of the "White Apartments" at the same time
11 Mr. Fernandez was waiving..

12 At approximately 12:45 a.m. a Remote Video Surveillance System operator notified Agents Serano
13 and Carter that an individual was climbing the International Border Fence near the "White Apartments."
14 The agents responded to the area, after seeing someone run from the fence to the side of the apartments.
15 Upon questioning the material witness, Mr. Portillo-Mendoza, he revealed that a friend of his made all of
16 his arrangements to bring him into the United States  Further, Mr. Portillo-Mendoza stated that he climbed
17 the fence upon instruction of the individual on the Mexican side of the fence who instructed him to run to
18 the individual who was waiving at him, but once he reached the "White Apartments" that individual was
19 no longer there. Mr. Portillo-Mendoza could not identify either Mr. Fernandez or Mr. Flores-Blanco when
20 shown a photo-lineup post arrest.

21 **B.**     **Interrogation**

22 At the border patrol station, Mr. Fernandez was read his Miranda rights and questioned regarding
23 the incident. Mr. Fernandez made statements regarding his involvement in the offense. He indicated that
24 he had gone a friend's house to visit with his brother, who he had hoped was there. After not being able
25 locate his brother at either location that he looked for him at, Mr. Fernandez walked past Mr. Flores-Blano's
26 home and exchanged pleasantries before continuing on to another friend's house. Mr. Fernandez ardently
27 denied being involved in smuggling any individuals and had no cell phone on his person at the time of his
28 arrest.

**C.    Trial**

On December 19, 2007, Mr. Fernandez was indicted for encouraging and inducing an alien to enter and reside in the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and (v)(II).

Counsel for the material witnesses filed a motion requesting a video deposition and the witnesses release to allow for removal of material witness Mr. Portillo-Mendoza to Mexico. Defense counsel on behalf of Mr. Fernandez objects to the release of the material witness, and requests that the Court either detain him or modify his bond so he can remain legally in the United States until the trial is over or the case is resolved.

## II.

## MOTION TO DETAIN THE MATERIAL WITNESSES

Mr. Fernandez respectfully requests that the court detain all material witnesses in this case and that the Court treat them pursuant to the provisions of section 3142. Title 18 U.S.C. § 3144 provides for the arrest and detention of persons who may give testimony material to a criminal proceeding. That statute states:

> If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title. No material witness may be detained because of inability to comply with any condition of release <u>if</u> the testimony of such witness can adequately be secured by deposition, and if further <u>detention is not necessary to prevent a failure of justice</u>. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

18 U.S.C. § 3144 (emphasis added). As this Court is aware, 18 U.S.C. § 3142 governs the conditions of release or detention. Thus, where the witness is not able to meet the conditions of release set by the court, e.g., bond, and is detained, the court may order the deposition of the witness where further detention is not necessary to prevent a "failure of justice." 18 U.S.C. § 3144. Such is not the case with the testimony of Mr. Portillo-Mendoza.

**A.    RELEASE OF THE MATERIAL WITNESS IN THIS CASE WOULD VIOLATE MR. FERNANDEZ'S CONSTITUTIONAL RIGHTS**

In this case, although deposition secured the witness' testimony, the Court must order the continued detention of the material witness to preserve Mr. Fernandez's constitutional rights or, in the alternative, set

1   a bond the witness can meet and that would allow him to remain in the United States legally until the case
2   is resolved. Failure by the Court to so order will result in a "failure of justice."

3   When considering this issue, the Court must balance the interests of the government, the accused,
4   and the material witness. Although the witness has a liberty interest at stake, that interest must give way to
5   Mr. Fernandez's constitutional rights. The Court would deny Mr. Fernandez his right to confrontation of
6   the witness[1] and due process of law[2] if it ordered the witness released in this case.

7   The Court must keep in mind that the only reason the government has not charged the witness with
8   a crime is that the government wants the witness' testimony against the accused. Needless to say, the
9   government would not concern itself with the witness' liberty interest if in fact it had charged the witness
10  with a crime. The material witness could have been charged under Title 8 U.S.C. § 1325, which has a
11  maximum sentence of six or twenty-four months imprisonment, or 8 U.S.C. § 1326, which has a maximum
12  sentence of 20 years in custody.

13  **1.  Authorizing the Material Witness' Deportation Facilitates His Unavailability for Trial in Violation of the Confrontation Clause.**

15  The Confrontation Clause serves a dual purpose: (1) it allows the accused to test the recollection and
16  the conscience of a witness through cross-examination; and, (2) it allows the jury to observe the process of
17  cross-examination and make an assessment of the witness' credibility. See Maryland v. Craig, 497 U.S. 836,
18  851 (1990). In a case such as this, where the witness has received the benefit of the government refraining
19  from pressing criminal charges in return for the witness' testimony against the accused, it is important that
20  the jury see the reaction and demeanor of the witness when confronted with questions that will bring out
21  such facts in order for the jury to decide whether to believe the witness' statements and how much weight
22  to give their testimony. The jury will not have the ability to make such an assessment if all it hears or sees

---

[2] U.S. Const. Amend. VI.

[3] U.S. Const. Amend. V.

is a video-taped deposition because the tape may not preserve subtle reactions of the witness under cross-examination that may favor the accused.[3]

The Supreme Court's recent holding in Crawford v. Washington, 541 U.S. 36 (2004), compels rejection of the request for a video deposition as allowing such evidence at trial would be contrary to the Sixth Amendment's confrontation clause. Crawford makes plain that a non-appearing witness' testimonial statements may not be admitted at a defendant's trial. Id. Although Crawford declined to define "testimonial," it cited as examples "pre-trial statements that declarants would reasonably expect to be used prosecutorially," and "extrajudicial statements contained in formalized testimonial materials, such as affidavits, *depositions*, prior testimony, or confessions." Id. at 51-52 (emphasis added). The previously referenced statements made by the material witness at the deposition, therefore, are testimonial in nature and come under the rubric of the Supreme Court's guarantees of confrontation set forth in Crawford. The government and counsel for the material witness would likely argue that Mr. Fernandez was capable of cross examining the material witness at the videotaped deposition and that such examination suffices to guarantee his right of confrontation. Mr. Fernandez disagrees with such an expansive position, which conflicts with the express holding of Crawford as well as its intent. The government and counsel for the material witness likely will also argue that testimony by deposition falls under an exception to hearsay where that witness is "unavailable." See Fed. R. Evid. 804(b)(1). Mr. Fernandez disagrees with this position as well.

First, the ability to question the material witness in this case at a deposition does not guarantee Mr. Fernandez the opportunity to confront them as contemplated by either the Sixth Amendment or the decision in Crawford. The Supreme Court's decision in Crawford contemplated "*meaningful* protection from [] core confrontation violations." Crawford, 541 U.S. at 63 (emphasis added). Deposing and releasing the material witness prior to trial and prior to completion of Mr. Fernandez's ongoing investigation destroys

---

[4] It is questionable whether release of the witness is statutorily permissible. Former 18 U.S.C. § 3503, entitled "depositions to preserve testimony," was repealed in November 2002. Title 18 governs criminal procedure and, thus, applies to the instant proceeding. Any assertion that Fed. R. Crim. P. 15 authorizes depositions in the place of § 3503 appears dubious given that Congress left intact the deposition provision for juveniles at 18 U.S.C. § 3509(b)(2). Statutory construction by negative inference indicates that Congress only intended for depositions to be admissible in lieu of live witnesses where juvenile witnesses are involved. See Lindh v. Murphy, 521 U.S. 320, 329 (1997). Reading Rule 15 consistent with this intent indicates that it only allows for the deposition of juvenile witnesses.

any opportunity for "meaningful" cross-examination as questioning will be limited to the few facts known to him at the time of the deposition.[4]  Discovery of additional facts and evidence during the ongoing investigation will necessitate additional questioning of the material witness about facts not known to Mr. Fernandez at the time of the deposition.  In the instant case, there are still outstanding discovery issues of critical importance to the identification of Mr. Fernandez as the driver of the Ford Bronco.  If released and deported, he will be unavailable for further meaningful cross-examination and Mr. Fernandez will be unable to question him as he is entitled under the Confrontation Clause.

Second, the hearsay exception is inapplicable to the deposition testimony to be presented at trial because counsel for the material witness implicitly is invoking Fed. R. Evid. 804(b)(1) in support of his request.  Counsel for the material witness is not a party to this case, unlike the government or defense.  As such, counsel for the material witness cannot justify release of the witness on such a basis.  Furthermore, as the government acceded to the material witness' depositions, by arguing for his return to Mexico, the government would be creating his unavailability for trial.  Accordingly, the government would not be permitted to justify admission of the material witness' deposed testimony pursuant to Fed. R. Evid. 804(b)(1).

Regardless of the Confrontation issues, the material witness has not demonstrated that "further detention is not necessary to prevent a failure of justice."  See Torres-Ruiz v. United States District Court, 120 F.3d 933, 935 (9th Cir. 1997). In support of the pending request for release following the videotaped deposition, counsel for the material witness asserts that this case is similar to that of Torres-Ruiz.  It is not for several reasons and, accordingly, Torres-Ruiz does not compel this Court to grant the request for release of the material witness.  Torres-Ruiz involved the detention of two men from a larger group of twenty-seven individuals.  Id.  First and foremost, the parties to Torres-Ruiz, including the defendant, expressed no opposition to claims by the material witness of hardship.  Mr. Fernandez opposes any such claim in the instant matter. Regardless, it is unclear how the material witness' current detention pose any hardships beyond those already created by their choices to leave his family at home and enter into the United States illegally.  His absences and separation from family would have continued had they successfully made it to

---

[5] This issue is especially problematic in the instant case given the lack of discovery to date.  To government counsel's credit, that discovery is being assembled for production.

1  his destination within the United States. He should not now be able to complain of any purported hardship
2  he initially created. The witnesses in Torres-Ruiz also demonstrated that they were the sole support for their
3  respective families in Mexico. According to material witness counsel's motion, this does not appear to be
4  the case for the material witness in this case. That motion simply provided an unsubstantiated factual claim
5  that the material witness' families "are receiving less support during the time he is incarcerated." Motion
6  of Ciro Hernandez (March 12, 2007). Torres-Ruiz, therefore, is inapposite to the facts of the instant case.

7  Finally, the motion submitted by counsel for the material witness appears to contain generalized
8  assertions in support of the request for release. Counsel's motion fails to elucidate the sort of hardship that
9  purportedly exists, other than mentioning that it is economic. His motion also fails to explain the efforts
10 undertaken to seek and secure sureties for the material witness, as only one potential surety was mentioned.

11 For these reasons, Torres-Ruiz does not compel this Court to order a deposition at this early stage
12 of the proceeding.

**2. Because Parts of His Testimony Could Support a Defense, Release of the Material Witness Will Violate Mr. Fernandez's Sixth Amendment Right to Compulsory Process.**

15 Release of the material witness before trial will violate Mr. Fernandez's Sixth Amendment right to
16 compulsory process. The Sixth Amendment states in relevant part: "In all criminal prosecutions, the accused
17 shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const.
18 amend. VI. The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in
19 plain terms the right to present a defense, the right to present the defendant's version of the facts as well as
20 the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to
21 confront the prosecution's witnesses, for the purpose of challenging their testimony, he has the right to
22 present his own witnesses to establish a defense." Washington v. Texas, 388 U.S. 14, 19 (1967).

23 Thus, the right to compulsory process offers a means by which defense witnesses are heard and
24 marks a right to have the testimony of defense witnesses entered into evidence for the jury on a footing equal
25 to the testimony of the prosecution witnesses. The Sixth Amendment contemplates a trial before a jury in
26 which the defendant has a right to confront adverse witnesses and a right to "compulsory process for
27 obtaining witnesses in his favor." U.S. Const. amend. VI.

Thus, actions of the government which make defense witnesses unavailable at trial violate Mr. Fernandez's Sixth Amendment rights to compulsory process and Fifth Amendment rights to Due Process. The right to compel the attendance of witnesses, and to offer their testimony at trial, has long been recognized to be at the core of the right to present a defense. Washington, 388 U.S. at 19. As Justice O'Connor stated in her concurring opinion in United States v. Valenzuela-Bernal, "In short, the right to compulsory process is essential to a fair trial." United States v. Valenzuela-Bernal, 458 U.S. 858, 875 (1982). The rights protected by the Compulsory Process Clause clearly include the right to present Mr. Fernandez's version of the facts to the jury so that it may decide where the truth lies. He is denied this crucial right when the government makes witnesses unavailable.

In Valenzuela-Bernal, the Supreme Court held that the deportation or voluntary return of alien witnesses whose testimony would be both "material and favorable" to the defense constitutes a violation of the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment. Id. The Court stated that sanctions would be appropriate if the defendant "makes a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." Id. at 873.

The rationale of Valenzuela-Bernal is that the government, acting through its Executive Branch, should be allowed to make a good faith determination that a detained witness possesses no evidence favorable to the defense, and following that determination, take steps to return the witness to Mexico rather than hold him or her in custody pending trial. The required showing necessary for sanctions following the release of material witnesses reflects this rationale: the defense must make some showing that the evidence lost would be "material and favorable" to the defense. Id. at 872. It is not required that a detailed description of the nature of the lost evidence be provided, but only that a "plausible showing" be made that the evidence will be material and favorable

Applying these principles to the facts at hand, Mr. Fernandez seeks to retain the material witness on the grounds that certain parts of his testimony, as mentioned previously, will support a defense Mr. Fernandez could assert at trial. Thus, Mr. Fernandez's constitutional right to compulsory process will be violated if the material witness is released and allowed to move outside the court's subpoena power

before he provides his favorable testimony at trial.[5] Indeed, the witness will be placing Mr. Fernandez at a disadvantage that triggers the "failure of justice" under § 3144.

Accordingly, § 3144 mandates the "further detention" of the material witness. 18 U.S.C. § 3144. If the material witness is released, he will return to Mexico making it both financially and physically impossible for him to return to the United States for a trial. In the alternative, this Court could lower the material witness' bond so that he can remain in the United States until the trial is over or the case is resolved.

**B. THE GOVERNMENT'S DEPORTATION OF A MATERIAL WITNESS POSSESSING EXCULPATORY INFORMATION WOULD VIOLATE THE UNITED STATES SUPREME COURT'S HOLDING IN *BRADY V. MARYLAND*.**

The Government's release and deportation of a material witness possessing exculpatory information would violate Mr. Fernandez's right, under Brady v. Maryland, to receive all exculpatory evidence. Through its intentional release and deportation of material witnesses, the Government would have effectively prohibited Mr. Fernandez from hope of receiving a fair trial in this case.

The Constitution prohibits the prosecution from suppressing material evidence in a criminal case. In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution. 373 U.S. at 87. As the Court noted in Brady, the purpose of the rule is not to punish prosecutors, but rather to ensure that the defendant receives a fair trial by ensuring that the prosecutor does not assume "the role of an architect of a proceeding that does not comport with the standards of justice, even though, as in the present case, her action is not 'the result of guile.'" Id. at 87-88.

In the present case, upon deportation the Government would violate the primary dictate of Brady, i.e. disclosure and preservation of exculpatory material. By deporting material witness, the Government would, in effect, bar Mr. Fernandez from this exculpatory evidence.

According to the analysis in California v. Trombetta, 467 U.S. 479 (1984), if the evidence was in control of the Government and is lost, dismissal is required if the evidence: 1) "possess[es] an exculpatory value that was apparent before the evidence was destroyed"; and 2) was "of such a nature that the defendant

---

[6] This is because the government will deport the witness after their release. Such action by the government will result in placing the witness beyond the subpoena power of the District Court.

1  would be unable to obtain comparable evidence by other reasonable available means." In <u>Trombetta</u>, the
2  Supreme Court affirmed the conviction because the defendant was unable to show that he met both of the
3  requested evidence requirements.

4       In contrast, in the present case, Mr. Fernandez can meet both requirements as stated in <u>Trombetta</u>.
5  The testimony of the material witness is exculpatory. During the deposition of Mr. Portillo-Mendoza, it was
6  revealed that Mr. Portillo-Mendoza could not identify Mr. Fernandez as an individual who was involved
7  with his coming into the United States. Further, he stated that the individual that he saw getting arrested
8  immediately after Mr. Portillo-Mendoza was detained also did not resemble the individual he saw in the
9  United States who allegedly assisted with his coming into the United States. Finally, Mr. Portillo-Mendoza
10 stated that he was unable to state who was or whether anyone was receiving payment for him being brought
11 into the United States. Likely, as the defense builds its case and completes further investigation, additional
12 evidence could be discovered that Mr. Portillo-Mendoza could provide further exculpatory information
13 regarding. In addition, the testimony of the material witness cannot be obtained from other sources that
14 would be comparable.

15      Without the testimony of the material witness, Mr. Fernandez will be unable to refute the many
16 allegations of the Government. Mr. Fernandez's case satisfies the two prong <u>Trombetta</u> test. The material
17 witness must therefore not be released.

## III.

## CONCLUSION

20      For the foregoing reasons, the defendant respectfully requests that this Court issue an order
21 preventing the government from deporting the material witness or taking any other action that would
22 materially interfere with Mr. Fernandez's right to obtain the testimony of the material witness at trial.

Respectfully submitted,

Dated: May 23, 2008          */s/ Candis Mitchell*
                                      **CANDIS MITCHELL**
                                      Federal Defenders of San Diego, Inc.
                                      Attorneys for Mr. Fernandez