KAREN P. HEWITT
United States Attorney
DAVID D. LESHNER
Assistant U.S. Attorney
California State Bar No. 207815
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7163
David.Leshner@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MARIO RAYMOND FERNANDEZ (1), <br><br> ERNESTO FLORES-BLANCO (2), <br><br> Defendants. | Criminal Case No. 07-CR-3405-W <br><br> DATE: August 19, 2008 <br> TIME: 9:00 a.m. <br><br> **UNITED STATES' TRIAL MEMORANDUM** |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and David D. Leshner, Assistant United States Attorney, and hereby files its Trial Memorandum.

**I**

**STATEMENT OF THE CASE**

**A.   INDICTMENT**

Defendants Mario Raymond Fernandez and Ernesto Flores-Blanco are charged by way of a Superseding Indictment with (1) Conspiracy to Bring In Illegal Aliens; (2) Bringing In Illegal Aliens For Financial Gain and Aiding and Abetting; and (3) Inducing and Encouraging Illegal Aliens to Enter the United States and Aiding and Abetting, in violation of 8 U.S.C. § 1324(a)(1)(A)(i); (a)(1)(A)(iv); (a)(2)(B)(ii); and 18 U.S.C. § 2.

/ / /

1   On June 18, 2008, defendant Fernandez pled guilty to Count Three of the Superseding Indictment.
2  His sentencing is set for September 15, 2008.

3  **B.   TRIAL STATUS**

4   A jury trial is scheduled for August 19, 2008, at 9:00 a.m. before the Honorable Thomas Whelan,
5  United States District Judge. The United States expects its case-in-chief to last two days.

6  **C.   DEFENSE COUNSEL**

7   Defendant Flores (hereafter "Defendant") is represented by appointed counsel, Sylvia Baiz, Esq.

8  **D.   DEFENDANTS' CUSTODY STATUS**

9   Defendant is in custody.

10 **E.   INTERPRETER**

11  The United States will not require the assistance of a Spanish-speaking interpreter for its
12 witnesses.

13 **F.   JURY WAIVER**

14  Defendant has not filed a jury waiver.

15 **G.   PRETRIAL MOTIONS**

16  On May 12, 2008, the Court denied Defendant's motion to suppress evidence following an
17 evidentiary hearing. The Court granted Defendant's motion to suppress statements without prejudice to
18 the Government providing evidence that Defendant received <u>Miranda</u> warnings prior to any custodial
19 interrogation.

20 **H.   STIPULATIONS**

21  To date, there are no stipulations.

22 **I.   DISCOVERY**

23  The Government has fully complied with its discovery obligations. Defendant has not provided
24 reciprocal discovery.

25 ///
26 ///
27 ///
28 ///

**II**

**STATEMENT OF FACTS**

**A.     Defendants' Apprehension**

On the evening of December 9, 2007, Calexico Border Patrol Station's Smuggler Targeting Action Team ("STAT") was conducting surveillance near Encinas Avenue and First Street in Calexico, California.  This area is approximately one-half mile east of the Calexico West Port of Entry and is immediately north of the International Boundary Fence which runs parallel to First Street.  The area is notorious for alien smuggling coordinated on both sides of the border.  Illegal aliens frequently scale the border fence assisted by smugglers in Mexico and then hide in nearby residences throughout the surrounding neighborhood with the assistance of smugglers in the United States.

At approximately 8:00 p.m. on December 9, plainclothes STAT agents observed defendants Fernandez and Flores walking together in the area of Encinas Avenue and Renaud Court.  Agents recognized Fernandez and Flores as persons arrested for alien smuggling on multiple prior occasions. Fernandez and Flores walked north on Encinas Avenue and entered the backyard of 806 Second Street. Over the next several hours, agents observed Fernandez repeatedly exit the backyard, walk toward First Street, hide next to a house at 739 First Street and look across the street toward the border fence while talking on a cell phone.  After each such excursion, Fernandez returned to the backyard of 806 Second Street.

At approximately 12:40 a.m., Fernandez again exited the 806 Second Street backyard and returned to the concealed location next to 739 First Street.  Fernandez was talking on a cellular phone, and a STAT team agent observed a suspected alien smuggler standing on the south side of the border fence in Fernandez' line of sight and talking on a cellular phone.  Fernandez motioned with his hand for the smuggler to move to the east.  The smuggler did so, and Fernandez said, "We're ready, now, now." Fernandez then walked quickly northbound on Encinas Avenue.

As Fernandez proceeded north on Encinas Avenue, another STAT agent observed Flores leave the 806 Second Street backyard and proceed eastbound through an alley toward a nearby apartment building located east of 739 First Street and known as the "White Apartments."  Flores walked into the midst of the White Apartments, crouched down with a visual of the border fence and spoke on a cellular

1 phone. Flores motioned with his hands toward the border fence and said, "I'm here." Flores then noticed
2 the STAT agent and immediately left the scene.

3       At approximately 12:45 a.m., a Remote Video Surveillance System operator notified agents that
4 a suspected illegal alien was climbing the border fence south of the White Apartments. Agents responded
5 and observed the suspected illegal alien run north from the fence and hide at the side of the White
6 Apartments. Agents apprehend the individual, who identified himself as Alejandro Portillo-Mendoza.
7 In response to agents' questioning, Portillo-Mendoza stated he was a citizen of Mexico without
8 documents allowing him to enter or remain in the United States.

9       Upon confirming that Portillo-Mendoza was an illegal alien, agents arrested Fernandez and
10 Flores.

11 **B.**     **Defendant's Post-Arrest Statement**

12       Flores received Miranda warnings and agreed to make a statement. He said he had gone to the
13 White Apartments to visit a friend and then went to his house to have something to eat. Flores also
14 maintained that he had been in his backyard with a friend named "Borrego" and that he had gone to
15 another friend's house three or four times that night. Flores denied involvement in alien smuggling.

16 **C.**     **Material Witness' Statement**

17       The material witness, Alejandro Portillo-Mendoza, informed agents that he had traveled to
18 Mexicali, Mexico with the intention of entering the United States. A friend had made arrangements for
19 him to be smuggled into the United States and would pay his smuggling fee.

20       On December 9, a smuggler took Portillo-Mendoza to the border fence. The smuggler pointed
21 to a person hiding on the north side of the fence between some houses and told Portillo-Mendoza to climb
22 over the fence and run to the person on the north side who would help him hide.

23       Portillo-Mendoza climbed the fence and ran to the location where the person had been hiding, but
24 no one was there. He hid on his own, and agents apprehended him shortly thereafter. Portillo-Mendoza
25 was unable to identify either Fernandez or Flores from photo lineups.

26 ///
27 ///
28 ///

### III

### **DEFENDANT'S CRIMINAL HISTORY**

Defendant has multiple arrests for alien smuggling and other offenses but no felony convictions of which the Government is aware.

### IV

### **WITNESSES**

The United States expects to call the following witnesses, although it reserves the right to change the order of these witnesses, substitute witnesses, add, or omit one or more witnesses.

1. Border Patrol Agent Stephen Carter
2. Border Patrol Agent Seth Sedano
3. Border Patrol Agent Rafael Alfaro
4. Border Patrol Agent Christian Diaz
5. Border Patrol Agent Bryan Yeo
6. Border Patrol Agent Joseph Wong
7. Border Patrol Agent James Escalante
8. Alejandro Portillo-Mendoza (videotaped deposition)
9. ICE Agent Paul Lewenthal (expert witness)

### V

### **EXHIBITS**

The Government will provide a complete exhibit list prior to trial and allow defense counsel to examine the exhibits before trial. The Government currently intends to offer the following into evidence:

1. Photographs of 739 First Street and the surrounding area
2. Photograph of Mario Raymond Fernandez
3. Cellular telephone
4. Cellular telephone records

///
///
///

# VI

# **LEGAL ISSUES**

**A.    Conspiracy To Bring In Illegal Aliens**

The essential elements of a violation of 8 U.S.C. § 1324 (a)(1)(A)(v)(I) are:

First, beginning on a date unknown and ending on or about December 10, 2007, there was an agreement between two or more persons to commit at least one crime as charged in the indictment [that is, the crime of bringing aliens to the United States]; and

Second, the defendant became a member of the conspiracy knowing of its object and intending to help accomplish it.

9th Cir., Manual of Model Jury Instructions for the Ninth Circuit, § 8.16 (2003).

**B.    Bringing In Illegal Aliens For Financial Gain**

The essential elements of a violation of 8 U.S.C. Section 1324(a)(2)(B)(ii) are:

1.    First, the defendant brought a person who was an alien into the United States for the purpose of commercial advantage or private financial gain;

2.    Second, the defendant knew or was in reckless disregard of the fact that the person was an alien who had not received prior official authorization to come to, enter or reside in the United States;

3.    Third, the defendant acted with the intent to violate the United States immigration laws.

9th Cir., Manual of Model Jury Instructions for the Ninth Circuit, § 9.1A (2003), added January 2007.

An alien is a person who is not a natural-born or naturalized citizen of the United States. An alien is not lawfully in this country if the person was not duly admitted by an Immigration Officer. The term "private financial gain" means any economic benefit.

**C.    Aiding And Abetting**

Under 18 U.S.C. § 2, the essential elements of aiding and abetting the offense of bringing in illegal aliens for financial gain are:

1.    The bringing in of illegal aliens for financial gain was committed by someone;

2.    The defendant knowingly and intentionally aided, counseled, commanded, induced or procured that person to commit the bringing in of illegal for financial gain of illegal aliens; and

1          3.     The defendant acted before the crime was completed.

9th Cir., Manual of Model Jury Instructions for the Ninth Circuit, § 5.1 (2003), modified February 2005.

"Aiding and abetting is not a separate and distinct offense from the underlying substantive crime, but is a different theory of liability for the same offense." United States v. Garcia, 400 F.3d 816, 820 (9th Cir. 2005). "For a defendant to be guilty of aiding and abetting, it is necessary that he in some way associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." United States v. Carranza, 289 F.3d 634, 642 (9th Cir. 2002) (internal citations omitted).

The plain language of 8 U.S.C. § 1324(a)(2)(B)(ii) requires only that the offense be done for the purpose of commercial advantage or private financial gain. A defendant who does not physically transport aliens across the border may be held criminally liable for aiding and abetting a "brings to" offense as long as the defendant knowingly and intentionally commanded, counseled, or encouraged the initial transporter to commit the "brings to" offense. United States v. Lopez, 484 F.3d 1186, 1199-1200 (9th Cir. 2007) (en banc).

**D.     Inducing and Encouraging Illegal Entry**

The essential elements of a violation of 8 U.S.C. Section 1324(a)(1)(A)(iv) are:

1.     The material witness was an alien;

2.     The defendant encouraged or induced the material witness to enter the United States in violation of law; and

3.     The defendant knew or was in reckless disregard of the fact] that the material witness' entry into the United States would be in violation of the law.

9th Cir., Manual of Model Jury Instructions for the Ninth Circuit, § 9.4 (2003).

**E.     Rule 404(b) Evidence**

Defendant Flores has been apprehended smuggling illegal aliens in Calexico, CA on multiple occasions between 2005 and 2007. On May 8, 2008, the United States gave notice to Defendant of its intent to introduce evidence of his prior apprehensions under Federal Rule of Evidence 404(b). In the interests of judicial economy, the United States will not seek to introduce evidence of every apprehension in its case-in-chief. Rather, the United States intends to introduce evidence in its case-in-chief

concerning two of those apprehensions which occurred on January 30, 2006 and December 5, 2005. Both apprehensions resulted from Flores's efforts to smuggle aliens who had jumped over the border fence in the vicinity of 806 Second Street. Evidence of these two apprehensions will not be unduly time consuming given that each apprehension resulted from a discreet and temporally limited encounter between Border Patrol agents and Flores. The United States will seek to introduce evidence of other prior apprehensions should Defendant testify or call any witnesses to testify on his behalf.

Rule 404(b) is a rule of inclusion, and "evidence of other crimes is inadmissible under this rule only when it proves nothing but the defendant's criminal propensities." United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992). See also United States v. Hinostroza, 297 F.3d 924, 928 (9th Cir. 2002) ("The only time such evidence may be excluded by rule 404(b) is if the evidence 'tends to prove only criminal disposition.'") (citation omitted, emphasis in original); United States v. Cruz-Garcia, 344 F.3d 951, 954 (9th Cir. 2003) ("[W]e have held that Rule 404(b) is one of inclusion, and if evidence of prior crimes bears on other relevant issues, 404(b) will not exclude it.") (citation omitted).

Evidence offered to prove something other than propensity – such as intent, knowledge, plan or absence of mistake – falls within the scope of Rule 404(b). This list is illustrative, not exhaustive. Cruz-Garcia, 344 F.3d at 955; United States v. Johnson, 132 F.3d 1279, 1282 (9th Cir. 1997) ("So long as the evidence is offered for a proper purpose, such as to prove intent, the district court is accorded wide discretion in deciding whether to admit the evidence and the test for admissibility is one of relevance.").

Rule 404(b) is of particular importance in a criminal case where, as here, the defendant's knowledge and intent is a relevant issue. As the Supreme Court recognized in United States v. Huddleston, 485 U.S. 681 (1988), "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." Id. at 685. See also United States v. Jones, 982 F.2d 380, 382 (9th Cir. 1992) (evidence of defendant's prior drug smuggling admissible to show defendant's intent and knowledge in prosecution for conspiracy to import marijuana).

When offered for a purpose other than propensity, evidence of other acts is admissible under Rule 404(b) where: (1) the act tends to prove a material point; (2) it is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; (4) the act is similar to the

offense charged; and (5) the act's probative value is not substantially outweighed by unfair prejudice under Rule 403. United States v. Romero, 282 F.3d 683, 688 (9th Cir. 2002) (citation omitted). Application of these five factors to Defendant's prior alien smuggling apprehensions weighs heavily in favor of admissibility.

First, Defendant's prior involvement in alien smuggling is material to the issues of knowledge, intent, plan and absence of mistake. The Ninth Circuit repeatedly has upheld the admission of evidence of prior apprehensions to establish the defendant's knowledge and intent with respect to the charged offense. See, e.g., United States v. Placante-Alvarez, 366 F.3d 1058, 1062 (9th Cir. 2004) (upholding admission of prior apprehension for importation of marijuana in prosecution for importation of marijuana); United States v. Howell, 231 F.3d 615, 628 (9th Cir. 2000) (upholding admission of prior drug convictions as relevant to show defendant's knowledge and to rebut defense that defendant was "merely present" at scene). In particular, such evidence is admissible to establish knowledge and intent in alien smuggling prosecutions. See, e.g., United States v. Ramirez-Jiminez, 967 F.2d 1321, 1327 (9th Cir. 1992) (where defendant was charged with transportation of aliens, trial court properly admitted evidence that defendant had associated with other smugglers on premises of smuggling operation to establish defendant's knowledge); United States v. Winn, 767 F.2d 527, 530 (9th Cir. 1985) (district court properly admitted defendant's prior conviction for transportation of illegal aliens "because it shows that appellant had knowledge of the smuggling operation in which he was involved"); United States v. Longoria, 624 F.2d 66, 69 (9th Cir. 1980) (district court did not err in admitting into evidence defendant's conviction for transporting illegal aliens two years prior because it was "highly relevant and admissible to show the requisite knowledge, criminal intent, and lack of innocent purpose"); United States v. Herrera-Medina, 609 F.2d 376, 379-80 (9th Cir. 1979) (district court properly admitted defendant's prior alien smuggling apprehensions to establish knowledge); United States v. Holley, 493 F.2d 581, 584 (9th Cir. 1974) (same).

Second, the "other act" evidence the Government seeks to introduce is not too remote in time. There is no bright-line rule requiring the Court to exclude other act evidence after a certain period of time has elapsed. United States v. Brown, 880 F.2d 1012, 1015 n. 3 (9th Cir. 1989). Defendant's prior apprehensions – both of which occurred approximately two years prior to the instant offense – are

1  sufficiently recent for the purposes of Rule 404(b). See, e.g., United States v. Dhingra, , 371 F.3d 557,
2  566 (9th Cir. 2004) (other act that occurred three years earlier properly admitted); United States v.
3  Johnson, 132 F.3d 1279, 1283 (9th Cir. 1997) (upholding admission of other act that occurred 13 years
4  before charged crime).

5  Third, the Government will present sufficient evidence of Defendant's prior involvement in alien
6  smuggling. Other act evidence under Rule 404(b) should be admitted if "there is sufficient evidence to
7  support a finding by the jury that the defendant committed the similar act." Huddleston, 485 U.S. at 685.
8  "[T]he testimony of a single witness . . . satisfies the low-threshold test of sufficient evidence for the
9  purposes of Rule 404(b)." Dhingra, 371 F.3d at 566. Here, as in Dhingra, the Government will satisfy
10 this threshold through percipient witness testimony.

11 Fourth, Defendant's prior alien smuggling endeavors are similar to the instant offense given that
12 those prior apprehensions involve the smuggling of aliens over the border fence in the same area of
13 Calexico, CA where the instant offense occurred.

14 Finally, this evidence is highly probative and is "not the sort of conduct which would provoke
15 a strong and unfairly prejudicial emotional response from the jury." Ramirez-Jiminez, 967 F.2d at 1327
16 (emphasis added).

## VII

## JURY INSTRUCTIONS

19 The United States will file its proposed jury instructions under separate cover.

## VIII

## VOIR DIRE

22 1. The United States will be calling witnesses who are employed by the United States
23 Border Patrol. Does anyone have family members or close friends who work, or have worked, for this
24 agency? Would that prevent you from being fair and impartial?

25 2. Of those of you who have sat on criminal juries, whose jury reached a unanimous verdict?
26 3. Has anyone had an unpleasant experience with any law enforcement personnel?
27 4. Has anyone had any disputes with any agency of the United States?
28 / / /

5.  Have you, relatives or close friends been investigated, arrested, accused or charged with a crime?
6.  Does anyone believe that the United States Government should not patrol the border it shares with Mexico?
7.  Does anyone have strong feelings about the Border Patrol or the former Immigration and Naturalization Service?
8.  Does anyone believe that our immigration laws are too harsh?
9.  Does anyone believe everyone should be allowed to enter the United States?
10. Does anyone believe that it should be legal to enter the United States without authorization?
11. Has anyone had an unpleasant experience at the United States border?
12. Does everyone understand that as a juror your duty is to apply the law regardless of whether you disagree with it?
13. Does everyone understand that the laws of the United States equally apply to everyone who enters the United States?
14. Does everyone understand that as a juror you are not to consider prejudice, pity or sympathy in deciding whether the defendants are guilty or not guilty?
15. Does anyone think they cannot decide whether a person is guilty or not guilty?
16. Does anyone have religious or moral beliefs which will make it difficult for them to make a decision strictly based on the law and facts of this case?
17. The Court will instruct you about the law. Will you follow the law as given by the Court and disregard any idea or notion you have about what the law is or should be?
18. Does everybody understand that the defendant is entitled to a fair trial? Does everybody understand that the United States is also entitled to a fair trial?
19. The law requires the United States to prove its case against the defendant beyond a reasonable doubt. If you are selected, would you want the United States to prove its case by a higher standard of proof, such as beyond all possible doubt?

///

20. This case involves the smuggling of illegal aliens into the United States. You may hear testimony in this case from an undocumented alien witness who agreed to be smuggled into the United States in violation of the law. Would you object to the United States' use of witnesses who themselves may have been involved in the criminal activity? Does anyone have strong feelings about the laws of the United States relating to alien smuggling?

The United States respectfully requests the right to submit additional questions prior to trial..

DATED: August 13, 2008.                    Respectfully submitted,

Karen P. Hewitt
United States Attorney

s/ David D. Leshner
DAVID D. LESHNER
Assistant U.S. Attorney

<pre>
                    UNITED STATES DISTRICT COURT

                   SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,      )    Case No. 07-CR-3405-W
                               )
         Plaintiff,            )
                               )
         v.                    )
                               )    CERTIFICATE OF SERVICE
MARIO RAYMOND FERNANDEZ (1),   )
                               )
ERNESTO FLORES-BLANCO (2),     )
                               )
         Defendants.           )
                               )
</pre>

IT IS HEREBY CERTIFIED THAT:

    I, DAVID D. LESHNER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action. I have caused service of **UNITED STATES' TRIAL MEMORANDUM** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    Sylvia Baiz, Esq.

    Candis Mitchell, Esq.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on August 13, 2008.

                  /s/ David D. Leshner
                  DAVID D. LESHNER